# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 25-3055

———————————————

United States of America

*Plaintiff - Appellee*

v.

Malcolm Desean Redmon, also known as Malcolm Deshawn Redmon, also known as Malcolm Redmond, also known as Harp

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

——————————

Submitted: April 16, 2026
Filed: July 14, 2026

——————————

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

——————————

LOKEN, Circuit Judge.

In 2016, Malcolm Redmon pleaded guilty to conspiring to distribute and possess with intent to distribute cocaine base. See 21 U.S.C. § 841(a)(1). The district court sentenced him to 292 months imprisonment and eight years supervised release. In January 2025, the President granted Redmon executive clemency and he was ordered to be released from Bureau of Prisons custody on July 16, 2025, with his term

of supervised release remaining.  He began his term of supervised release that day. Before release, the district court modified his conditions of supervised release to require that he "reside in and satisfactorily participate in a residential reentry center program, until discharged by the center director after consultation with the Probation Office, for a period not to exceed 120 days."

Within two weeks, the residential reentry center terminated Redmon's participation in its program because he violated the facility's rules prohibiting alcohol and was dismissive toward staff at a disciplinary meeting.  Shortly thereafter, Redmon violated another condition by traveling more than fifty miles from his residence without notifying his probation officer.  When arrested, he declined an offer to modify his conditions of supervision, and the Probation Office commenced supervised release revocation proceedings.  After a revocation hearing in October 2025, the district court found two grade C violations, revoked supervised release, and sentenced him to 14 months imprisonment, the top of his advisory guidelines range of 8 to 14 months imprisonment.  See USSG § 7B1.4(a).

Redmon appeals, arguing that his revocation sentence was influenced by retribution for his underlying offense in violation of Esteras v. United States, 606 U.S. 185, 188 (2025), and that his supervised release conditions impermissibly authorize more than 400 hours of community service, contrary to our decision in United States v. Hinkeldey, 124 F.4th 1093, 1094 (8th Cir. 2024).  Concluding that the district court did not violate Esteras as construed in United States v. Higgerson, 166 F.4th 702, 707 (8th Cir. 2026), and in decisions of our sister circuits, and that Hinkeldey is distinguishable, we remand for further consideration of the supervised release condition and otherwise affirm.

# I. The Esteras Issue

When a criminal sentence includes a term of supervised release after the defendant has served his prison sentence, and the defendant then violates one or more conditions of supervised release, 18 U.S.C. § 3583(e) provides that the district court "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," may "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term," or "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term." Excluded from this statutory list is consideration of the § 3553(a)(2)(A) factor -- "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." This is a "retribution" consideration, one of "the four purposes of sentencing generally." Tapia v. United States, 564 U.S. 319, 325 (2011); see Esteras, 606 U.S. at 191-93.

**A.** In Esteras, the Supreme Court granted certiorari to resolve a conflict in the circuits over whether the exclusion in § 3583(e) precludes all consideration of the § 3553(a)(2)(A) factor, or whether -- as the government contended -- courts may still consider retributive purpose when revoking supervised release but are not required to do so. Based on the plain meaning of the statute confirmed by statutory structure and its prior decisions including Tapia, the Court held that "courts *cannot consider* § 3553(a)(2)(A) when revoking [or modifying] supervised release." 606 U.S. at 192 n.3, 195 (emphasis added). Section 3553(a)(2), the Court explained, "captures [in subsections (A) to (D)] the traditional heartland of criminal sentencing . . . . considerations [of] retribution, deterrence, incapacitation, and rehabilitation [that] are the four purposes of sentencing generally." Id. at 191.

[I]n our current criminal justice scheme . . . supervised release . . . "is not a punishment in lieu of incarceration." Rather, it "fulfills rehabilitative ends" . . . . So when a defendant violates the conditions of his supervised release, it makes sense that a court must consider the *forward-looking* ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the *backward-looking* purpose of retribution.

Id. at 196 (emphases in original) (citations omitted). Thus, in determining the appropriate supervised release revocation sentence, the court must limit its consideration to "the factors set forth in" the listed subsections in (a)(1), (2), and (4)-(7) of § 3553, which include "the nature and circumstances of the offense" and "the history and characteristics of the defendant," § 3553(a)(1); and the need "to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment," § 3553(a)(2)(B), (C), and (D). "For instance," the Court explained, "if the defendant's original offense was particularly violent, that fact might inform the court's judgment as to whether revocation is necessary 'to protect the public from further crimes of the defendant.' § 3553(a)(2)(C). But the court could not revoke based on the view that, given the violent nature of the underlying offense, the defendant deserves additional punishment." Esteras, 606 U.S. at 200.

The Court then addressed the dissent's concern that in applying this rule it will be difficult for appellate courts to determine whether a district court has impermissibly relied on § 3553(a)(2)(A):

If the defendant does not make the district court aware that it may be impermissibly relying on § 3553(a)(2)(A), then the defendant's appeal will be governed by plain-error review. See Fed. Rule Crim. Proc. 52(b). In that event, the district court's order revoking supervised release

and requiring reimprisonment will be affirmed unless it is "clear" or "obvious" that the district court actually relied on § 3553(a)(2)(A) -- because it did so either expressly or by unmistakable implication.

If the defendant does object to the district court's reliance on § 3553(a)(2)(A) . . . [and] the court nonetheless considers the need to exact retribution for the defendant's original criminal offense, and if the error was not harmless, then the court of appeals should vacate . . . and remand for the court to apply the correct standard.

Id. at 202-03 (citations omitted).

**B.** At Redmon's revocation sentencing hearing, his attorney advised that Redmon contested the alleged Grade C alcohol and travel violations. The government presented testimony by the Probation Officer and documentary evidence regarding the allegations and Redmon's brief time on supervised release. A federal defender's investigator testified regarding his interview of an RRC resident who said the bottle Redmon gave him contained soda pop, and his two interviews of persons who described Redmon's attempts to obtain employment. After arguments by counsel, the district court found two Grade C violations and determined a revocation guideline range of 8-14 months imprisonment. Defense counsel urged a sentence of time served ("about one month and 23 days"), stressing Redmon's rehabilitative progress in prison before the grant of clemency, his compliance with other RRC rules and supervised release conditions, his success in finding a stable residence and employment, and his "desire to move forward in a positive direction." After Redmon addressed the court in allocution, the court explained the sentence it was imposing:

You were out such a very short time, and maybe I'm silly, but this is my fantasy world . . . . I think prison is horrible. The times I've visited prison, and I'm there for an hour, I think it's horrible.

I don't think I ever want to go back there, and I'm just visiting for an hour. I think people sit around in prison thinking I don't ever want to come back here ever. I'm going to do whatever it takes to not come back here. I'm going to comply with my probation. I'm going to get a steady job. I'm going to get a steady house because freedom is so much better than prison. That's the fantasy world I live in.

Right or wrong, that's where I'm coming from. And so for you to come out so quickly and to have these hiccups back to back, that causes me a lot of concern.

So it's the judgment based upon that, those nature and circumstances of the offense, it's the judgment of this court that the defendant is sentenced to the Bureau of Prisons for 14 months. 48 months of supervised release to follow.

All the same conditions that have been ordered before.

After advising Redmon of his right to appeal, the district court asked, "Anything additional from the defense?" Related to the Esteras issue raised on appeal, defense counsel responded: "to the extent that the court's judgment is based on the violations and the seriousness of these violations and respect for the law and just punishment, I would object for the record."

On appeal, Redmon argues the district court violated Esteras and committed procedural error by considering the forbidden 18 U.S.C.§ 3553(a)(2)(A) retribution factor in selecting the revocation sentence. "We review the procedural soundness of a revocation sentence with the same deferential abuse-of-discretion standard applied to the initial sentencing proceedings." United States v. Thomas, 135 F.4th 1115, 1117 (8th Cir. 2025). Redmon did not allege procedural error in the district court. His assertion on appeal that improper consideration of 18 U.S.C. § 3553(a)(2)(A) is always procedural error misstates Eighth Circuit law:

We note this issue could be raised either as the procedural error of considering an improper factor or as the substantive error of giving significant weight to an improper factor in imposing a sentence. . . . We have treated the district court's giving significant weight to an improper or irrelevant factor as a substantive reasonableness issue. We leave for another day whether this error is better addressed as a procedural or substantive error. Because Hall only raises the issue of substantive reasonableness . . . we only review for substantive error.

United States v. Hall, 931 F.3d 694, 697 (8th Cir. 2019) (citations omitted). Failure to raise an issue of procedural error at sentencing deprives the district court of an opportunity to explain its reasoning and correct any inadvertent error. See, e.g., Higgerson, 166 F.4th at 708 & n.3. Here, Redmon's specific objection at sentencing -- "I would object for the record" -- gave the district court no basis to infer that he was alleging procedural error that required a response. But his objection did specifically refer to two of the retributive factors in § 3553(a)(2)(A), and the government does not argue that the issues raised are subject to plain error review under Esteras. So we will assume without deciding that he did enough to preserve these issues for appellate review and leave unresolved whether the alleged error is better addressed as procedural or substantive error because we need not decide this issue.[1]

On the merits, the Court held in Esteras that, "[i]f the defendant does object to the district court's reliance on § 3553(a)(2)(A) . . . [and] the court nonetheless

---

[1]If the issue is governed by plain error review, "we interpret[] the plain error standard for review of this issue under Esteras as virtually indistinguishable from our review of an 'insignificant' additional justification in our pre-Esteras decision in Hall[, 931 F.3d at 697]." Higgerson, 166 F.4th at 708. We affirm "unless it is 'clear' or 'obvious' that the district court actually relied on § 3553(a)(2)(A) -- because it did so either expressly or by unmistakable implication." Esteras, 606 U.S. at 202-03; see United States v. Jokhoo, 141 F.4th 967, 970 (8th Cir. 2025).

considers the need to exact retribution for the defendant's original criminal offense, and if the error was not harmless, then the court of appeals should vacate . . . and remand." 606 U.S. at 203. Redmon has the burden to establish that the district court's response to his objection demonstrated that "the court nonetheless consider[ed] the need to exact retribution for the defendant's original criminal offense." Id. Here, the district court's explanation of its sentence did not even refer to the retributive factors incorporated in § 3553(a)(2)(A), stating only that its judgment is based upon the "nature and circumstances of the offense," a listed permissible factor, § 3553(a)(1). Redmon's "for the record" objection gave the court no reason to respond because the court's immediately preceding explanation of the reasons for its sentence gave no basis to infer that it "actually relied on § 3553(a)(2)(A)."

In Hall, we held that "the nature and circumstances of the offense as compared to the defendant's criminal history . . . are permissible factors for revocation sentences." 931 F.3d at 697. Esteras makes clear that a court may consider "the history and characteristics of the defendant," § 3553(a)(1), and "the nature and circumstances of the offense as relevant for the considerations set forth in §§ 3553(a)(2)(B), (C), and (D) -- namely, deterrence, incapacitation, and rehabilitation." 606 U.S. at 200. The Court also did not disturb our prior cases concluding that § 3583(e) does not preclude courts from punishing an offender for his breach of the court's trust in committing the supervised release violations. See United States v. Wilson, 939 F.3d 929, 933 (8th Cir. 2019); cf. United States v. Harbin, No. 25-1015, 2026 WL 371140, at *3 (7th Cir. Feb. 10, 2026); United States v. Johnson, No. 24-3787, 2026 WL 50666, at *3 (6th Cir. Jan. 7, 2026). Indeed, this is a theory endorsed by the Sentencing Commission in revocation sentencing. See USSG Ch. 7, Pt. A, intro. comment. 3(b) ("at revocation the court should sanction primarily the defendant's breach of trust"); see also United States v. Haymond, 588 U.S. 634, 658 (2019) (Breyer, J., concurring), and 671 (Alito, J., dissenting).

The Court in Esteras explained that "§ 3553(a)(2)(A) does not speak of retribution generally -- it references the need for the sentence 'to reflect the seriousness of the *offense*' and to 'provide just punishment for the *offense*.' In the context of a revocation hearing, the 'offense' is the underlying crime of conviction, not the violation of the supervised-release conditions." 606 U.S. at 193-94 (emphasis in original) (citation omitted). Redmon contends that the district court's reference to the "nature and circumstances of the *offense*" implied that he was being punished for the underlying crime of conviction in violation of § 3553(a)(2)(A), not for the "two relatively minor" supervised release violations. "Not once," he argues, "did the court say Mr. Redmon should be punished for his supervised release violations."

We disagree that the district court's boiler-plate reference to the nature and circumstances of the *offense* is evidence the court was considering the need to exact retribution for Redmon's *original criminal offense* and not for his supervised release violations. In the context of determining an appropriate revocation sentence based on "the history and characteristics of the defendant," a permissible factor under § 3553(a)(1), the district court's use of the word "offense" meant the defendant's entire criminal history, including the nature and circumstances of both the original offense and the supervised release violations, viewed as a continuum establishing the need for a sentence that furthers the purposes of sentencing incorporated by § 3583(e) -- deterrence, incapacitation, and rehabilitation. Cf. United States v. Hardeman, No. 24-2832, 2025 WL 3162325, at *2 (3d Cir. Nov. 12, 2025). Had Redmon asked whether the court was basing its judgment on the original offense, then the court's response (or lack of a response) would be relevant to the Esteras inquiry. But on this record, the court's explanation of the reasons for its sentence "strongly imply that its focus was . . . on the *forward looking* ends of sentencing." Higgerson, 166 F.4th at 709 (quotation omitted) (emphasis in original).

Redmon further argues the district court "focused on Mr. Redmon's failure to learn his lesson from serving his original term of imprisonment" and told him he must obey his probation officer, which "suggested Mr. Redmon had not been punished severely enough" and promoted respect for the law, which are forbidden § 3553(a)(2)(A) factors. We disagree. The focus on repeated supervised release violations is a focus on the defendant's "history and characteristics rather than the retribution for the offenses." Id. at 708. And Redmon's failure to obey his probation officer -- by traveling more than 50 miles without seeking permission as instructed -- was precisely the Class C violation for which his release was being revoked, so that focus does not demonstrate reliance on the forbidden § 3553(a)(2)(A) factors.

Redmon has failed to establish an Esteras violation.

## II. The Community Service Condition

On appeal, Redmon argues the district court erred by imposing a condition of supervised release that requires full-time employment and includes a potential community service obligation that is not "capped" at 400 hours, as a Guidelines Commentary generally requires. USSG § 5F1.3 comment. (n.1). This is a complex, unsettled issue.

The standard conditions of Redmon's supervised release when he committed the supervised release violations at issue included:

> 5. The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons.

The special conditions of supervised release included:

-10-

4) The defendant shall comply with the Western District of Missouri Offender Employment Guideline which may include participation in training, counseling, and/or daily job searching as directed by the probation officer. *If not in compliance with the condition of supervision requiring full-time employment at a lawful occupation, the defendant may be required to perform up to 20 hours of community service per week until employed, as approved or directed by the probation officer.*

(Emphasis added.)[2]  At the end of the revocation hearing, after explaining that the revocation sentence it was imposing would include "[a]ll the same conditions [of supervised release] that have been ordered before," the district court asked, "Anything additional from the defense?"  Before noting the above-discussed Esteras issue, defense counsel responded:

> **Counsel**: With regard to the special condition of supervised release requiring a possible term of community service, I'd ask that that be capped at the 400-hour maximum . . . --
>
> **Court**: Is there a community service element that I --
>
> **Counsel**: And I believe that in Mr. Redmon's special conditions of supervised release specifically, the employment condition, there is a --
>
> **Court**: No community service?

---

[2]The standard and special conditions of supervised release in effect when Redmon was sentenced in 2025 were discretionary conditions.  Standard conditions, listed in USSG § 5D1.3(c), are recommended for supervised release and are rarely challenged.  Special conditions, listed in § 5D1.3(d), are recommended in some circumstances and "may otherwise be appropriate in particular cases."  They are frequently challenged.  See United States v. The-Nimrod Sterling, 959 F.3d 855, 860-61 (8th Cir. 2020).  On direct appeal, we review the imposition of discretionary conditions for abuse of discretion.  Id.

**Probation Officer**: No additional community service.

**Court**: No additional community service.

The written Judgment in a Criminal Case dated October 1, 2025 and signed by the district judge included a similar employment condition and an identical community service provision.

**A.** A district court in sentencing a defendant to a term of probation shall impose defined mandatory conditions and may provide as a further standard condition, to the extent "reasonably related to the factors set forth in section 3553(a)(1) and (a)(2)," that the defendant "work in community service as directed by the court." 18 U.S.C. § 3563(b)(12). Consistent with this probation provision, § 3583(d) provides that a court in imposing a sentence that includes a term of supervised release "may order, as a further condition of supervised release . . . any condition set forth as a discretionary condition of probation in section 3563(b)."

Congress has directed the Sentencing Commission to promulgate "(1) guidelines . . . for use of a sentencing court in determining the sentence to be imposed" including "(C) whether a sentence to a term of imprisonment should include a requirement that the defendant be placed on a term of supervised release after imprisonment," 28 U.S.C. § 994(a)(1)(C), and "(2) general policy statements regarding application of the guidelines . . . including the appropriate use of . . . (B) the conditions of probation and supervised release set forth in sections 3563(b) and 3583(d) of title 18," 28 U.S.C. § 994(a)(2)(B).

Chapter Five of the Sentencing Guidelines Manual in effect in 2024 is entitled Determining the Sentence. Part 5F1.1-8 deals with "Sentencing Options" other than imprisonment -- Community Confinement, Home Detention, Community Service,

Order of Notice to Victims, Occupational Restrictions, Denial of Federal Benefits, the Shock Incarceration Program, and Intermittent Confinement. Section 5F1.3 expressly provides that "[c]ommunity service may be ordered as a condition of probation or supervised release." Its Commentary, USSG § 5F1.3 comment. (n.1), frames the issue on appeal:

> Community service generally should not be imposed in excess of 400 hours. Longer terms of community service impose heavy administrative burdens relating to the selection of suitable placements and the monitoring of attendance.

The original Guidelines Manual, which contained substantial explanations for most guidelines provisions when they were first made effective on November 1, 1987, gave no history or explanation for Section 5F1.3 and its Commentary, including the choice of 400 hours as the "cap" on the term of community service that "generally" should be imposed. The hundreds of guidelines amendments adopted since 1987 contain no provisions explaining this substantive limitation. So reviewing courts lack the usual quasi-legislative history in interpreting this Guidelines Commentary. Of considerable interest, however, is a December 28, 1990 Report from the Commission's Alternatives to Imprisonment Project, a broad project begun before the Guidelines were adopted in 1987:

> It is recommended that no offender be required to perform more than *1080 hours* of public service work which would be the equivalent of 3 months of imprisonment. It would be very difficult to enforce greater amounts of public service work. This is consistent with information collected during site visits.[3]

---

[3]The Federal Offender: A Program of Intermediate Punishments at 62, U.S. Sent'g. Comm'n Alternatives to Imprisonment Project (Dec. 28, 1990).

The Report was not published by the Commission but can be found on its website. It includes a disclaimer that it "does not necessarily represent the official position of the United States Sentencing Commission." When the original Guidelines were adopted, the Commission likely was aware of what its Alternatives Project was studying and had learned. Yet as far as we can determine, the Commission did not comment after publishing this Report which contained a recommendation contrary to its unexplained 400-hour "cap" on community service when a defendant on supervised release has failed to comply with his obligation to remain employed, a favored alternative to imprisonment.[4]

**B.** Before reaching the merits of the challenged community service special condition, we must address Redmon's contention that the written Judgment containing the condition is inconsistent with the court's oral ruling, in which case "the oral sentence controls." United States v. Buck, 661 F.3d 364, 374 (8th Cir. 2011), cert. denied, 566 U.S. 1017 (2012). "If a district court's written judgment is consistent with its discernible intent in the oral pronouncement and simply clarified an imprecisely pronounced special condition, there is no conflict and we may treat the written judgment as operative." United States v. Mays, 993 F.3d 607, 622 (8th Cir. 2021) (cleaned up).

This issue turns on the meaning of the district court's oral declaration of "no additional community service," which no one asked the court to clarify. The court had just stated it was imposing "All the same conditions that have been ordered

_____

[4]If the Commission were called upon to explain Section 5F1.3 and its Commentary's choice of 400 hours as the "cap" on a defendant's term of community service, and the response showed either that 400 hours was pulled "out of the air" or that a greater cap was not considered or was rejected for arbitrary reasons, the Commentary would be a policy statement warranting little if any judicial deference under Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024).

-14-

before," and defense counsel then surprised the court with an unexplained request that one condition "be capped at the 400-hour maximum" -- on its face a request for modification. This context makes clear that the court's "no additional community service" response meant "the same" community service condition. Redmon did not clarify his request or ask the court to clarify its response. Thus, the written Judgment does not conflict with the court's oral ruling. "If the actual verbal judgment is ambiguous, the intent of the sentencing court may be construed from the entire sentence pronouncement." Buck, 661 F.3d at 374 (quotation omitted).

**C.** Redmon further argues that the supervised release special condition should be modified because it imposes a condition authorizing more than 400 hours of community service without any justification for the excess hours, relying on Hinkeldey, 124 F.4th at 1094. The government contends that, unlike in Hinkeldey, this issue is not ripe for review, as we recently concluded in United States v. Mejia, 172 F.4th 601, 607 (8th Cir. 2026).

A defendant may appeal "an otherwise final sentence if the sentence . . . was imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(2). "The court in imposing a sentence . . . may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." § 3583(a). On direct appeal, we review the district court's imposition of special conditions of supervised release for abuse of discretion, in most cases requiring "an individualized inquiry" into the underlying facts and circumstances to ensure, among other things, that the special condition is "consistent with any pertinent policy statements issued by the Sentencing Commission." United States v. Deatherage, 682 F.3d 755, 758 (8th Cir. 2012); see generally United States v. Hart, 829 F.3d 606, 608-09 (8th Cir. 2016).

"A defendant may challenge the validity of his underlying conviction and sentence through a direct appeal or a habeas corpus proceeding, not through a collateral attack on a supervised-release revocation proceeding." United States v. Miller, 557 F.3d 910, 913 (8th Cir. 2009). Here, Redmon challenges part of a sentence imposed in his supervised-release revocation proceeding. But the decision to impose a sentence that includes a special condition of supervised release -- which may be, but need not be, the same as a prior condition -- is a new sentence and therefore may be challenged on direct appeal, unless the appeal is foreclosed, for example, because the validity of the prior condition was previously upheld on appeal. See United States v. Simpson, 932 F.3d 1154, 1156 (8th Cir. 2019).

Likewise, appeal from the denial of a motion asking the district court to exercise its discretion under 18 U.S.C. § 3583(e)(2) to modify a previously imposed condition "does not arise from a supervised-release revocation proceeding . . . and there is no barrier to our reviewing the district court's judgment on appeal." United States v. Trimble, 969 F.3d 853, 857 (8th Cir. 2020).[5] Thus, we have jurisdiction to review the denial of what was, in effect, Redmon's request to modify a new special condition. See United States v. Romig, 933 F.3d 1004, 1007 (8th Cir. 2019) (affirming the denial of defendant's pre-release § 3582(e)(2) motion to modify on the merits); United States v. Thomas, 198 F.3d 1063, 1065 (8th Cir. 1999).

**D.** Redmon challenges the validity of the special condition as contrary to the Guidelines because it does not incorporate or acknowledge the 400-hour "cap" on community service set forth in a Guidelines policy statement, the Commentary to

---

[5]In Trimble, the motion to modify was not made during a revocation proceeding, and Trimble was not challenging, as Redmon does in this case, the *reimposition* of a supervised release condition he had not challenged when it was first imposed. We doubt that would affect our appellate jurisdiction to review the denial of a motion or request to modify, but the issue is not before us.

-16-

USSG § 5F1.3. In Hinkeldey, the defendant's five-year term of supervised release required full-time employment, or 20 hours of community service per week until employed. On direct appeal from an order modifying another condition of supervised release, we noted that Hinkeldey "could potentially be required to perform" approximately 5,000 hours of community service, and we modified the 20-hours-per-week condition *sua sponte* to require reconsideration "if and when Hinkeldey reaches 400 total hours of community service." 124 F.4th at 1094. Redmon's Reply Brief urges us to grant the same relief, or remand to the district court to modify his community service condition accordingly.

In Mejia, decided a few days before this case was argued and submitted, the district court imposed an initial sentence of 322 months imprisonment followed by 60 months of supervised release that included the condition that he "'work full time' or, in his probation officer's discretion, 'perform up to 20 hours of community service per week.'" 172 F.4th at 604. On direct appeal of his conviction and sentence, we dismissed the appeal of this condition because it was not "ripe for adjudication" -- "[i]t rests upon 'contingent future events,' like whether his probation officer will decide that community service makes sense for Mejia, given that he will be over 70 by the time he leaves prison." Id. at 607. We distinguished Hinkeldey, where the defendant was already on supervised release and the question of ripeness was not addressed, because Mejia's condition "does not threaten imminent harm," noting that "[o]nce the community-service condition imposes *some* hardship on him, he is free to try again." Id. at 608. Before this case was argued, we directed counsel "to be prepared to discuss the impact of our recent decision in [Mejia]" at oral argument.

The government argues that, like Mejia, the community service condition in this case is not ripe for appellate review because Redmon has not completed his prison sentence, so the community service condition does not threaten imminent harm. Redmon argues the issue is ripe for decision because it satisfies the ripeness

inquiry directed by the Supreme Court in Abbott Labs. v. Gardner, 387 U.S. 136, 148, 149 (1967) -- the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Neb. Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1038 (8th Cir. 2000) (quotation omitted).

In Nebraska Public Power we explained: "The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." Id. at 1037. Its "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs., 387 U.S. at 148. Whether Redmon's case is ripe is a difficult question:

> The basic inquiry is whether the "conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interest, a dispute definite and concrete, not hypothetical or abstract. . . . When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest . . . he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief. . . . Even though a challenged statute is sure to work the injury alleged, however, adjudication might be postponed until a better factual record might be available.

Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298-300 (1979) (cleaned up).

Most other circuits treat ripeness concerning supervised release conditions as an issue of prudential ripeness. See, e.g., United States v. Vaquera-Juanes, 638 F.3d 734, 736 (10th Cir. 2011). "[C]hallenges to conditions of supervised release are usually prudentially ripe for review even before the conditions are actually enforced." United States v. Ford, 882 F.3d 1279, 1284 (10th Cir. 2018). Applying that standard, Redmon seems clearly to have alleged a case or controversy -- "a real, substantial

-18-

controversy between parties having adverse legal interest" -- subject to the prudential limitations of the ripeness inquiry. The court in Ford recognized that in some supervised release cases, the condition may involve an issue of law that is fit for immediate determination, and withholding review will place at least a slight hardship on the defendant, even though the condition will not be imposed, if at all, until he is released after completing his revocation sentence of imprisonment. In such a case, the Tenth Circuit panel joined other courts in concluding that, "as prudential ripeness is [] a discretionary doctrine . . . . [w]e think the wiser course . . . is to review Ford's challenge in spite of his long term of incarceration." Id. at 1285. In other words, as in other contexts, the appeal may be ripe to consider a facial challenge to all or part of the challenged condition, but it is not ripe for determination of whether it will be invalid as-applied to Redmon after he has served his prison sentence, when the circumstances affecting compliance with his employment-related obligations may be different.[6] We agree with this approach to the problem.

**E.** The first Abbott Labs prudential factor is whether the issue is fit for judicial decision. 387 U.S. at 149. "A case is fit for judicial decision when it would not benefit from further factual development and poses a purely legal question not contingent on future possibilities." Sch. of the Ozarks, Inc. v. Biden, 41 F.4th 992, 998 (8th Cir. 2022). Here, Redmon claims the condition -- 20 hours of community service for an undefined period of his supervised release -- is *invalid* because it is, on its face, contrary to the § 5F1.3 Commentary. It is clearly not substantively contrary to § 5F1.3 and the statutes that authorize that Guideline. "Generally" does not mean "always." The condition recognizes that when Redmon begins supervised release at the end of his revocation term of imprisonment, he is subject to the employment condition and must begin community service if he cannot remain or has not remained

---

[6]We are advised that Redmon will be eligible for release from imprisonment in September 2026.

employed. The condition does not necessarily impose more than 400 hours of community service. It simply gives Redmon's Probation Officer the option to order community service if Redmon does not comply with his employment conditions. If the Probation Officer exercises that option, Redmon may move to modify the condition as he approaches or exceeds the Commentary's 400-hour cap, and the court may exercise its discretion not to terminate the condition or to impose an hours limitation based on the totality of Redmon's current employment circumstances.

Redmon also alleges the community service condition is procedurally invalid because it does not include the Commentary's 400-hour cap -- the basis for the grant of relief in Hinkeldey. We presume the undefined "procedural error" Redmon alleges is the district court's alleged failure to *justify* its decision; failure to include a 400-hour cap would be an alleged substantive error. In United States v. Jimenez, 175 F.4th 341, 357 (2d Cir. 2026), a Second Circuit panel held that failing to impose a 400-hour cap was not substantive error:

> [W]e have never held that a condition is per se impermissible because it could lead to over 400 hours of community service. Our decision in Parkins . . . merely held that courts should "generally refrain" from imposing conditions that exceed the 400-hour threshold, and that when they do, there must be a compelling justification that distinguishes the defendant "from the generality of cases". . . . The condition here . . . is contingent on Jimenez's lack of employment (or excuse from employment). Therefore, [it] incorporates its own limiting principle and ensures that community service will not interfere with productive employment.

See also United States v. Vega, 545 F.3d 743, 748 n.4 (9th Cir. 2008) ("Neither the [Commentary] nor the Guidelines, however, prohibits the imposition of more than

400 hours.").[7] Despite the absence of procedural error, however, the court in <u>Jimenez</u> nonetheless held that the issue was ripe for judicial review while the defendant was still incarcerated. 175 F.4th at 354. Likewise, we agree that the issue is fit for facial review at this time, as the Tenth Circuit concluded in <u>Ford</u>.

We also conclude Redmon will face some hardship if we withhold consideration of his facial challenge -- the second <u>Abbott Labs</u> prudential factor. 387 U.S. at 149. He is currently set for release in September 2026, unlike the defendant in <u>Mejia</u>, and his options for review if he approaches the 400-hour cap and the Probation Office requires additional compliance are to ask the district court to modify the condition under 18 U.S.C. § 3583(e)(2) or to violate it. The latter risks more imprisonment, contrary to the purpose of the Guidelines Part 5F provisions, while the former would require him to proceed without the benefit of appointed counsel, to which he is entitled on direct appeal of the sentence. See <u>United States v. Cabral</u>, 926 F.3d 687, 696 (10th Cir. 2019); Fed. R. Crim. P. 32.1(c)(2)(B). Moreover, he will likely be harmed by the challenged condition before the district court considers a request to modify, especially if, as the government argues, we require him to wait until the 400-hour mark is exceeded. See <u>Ford</u>, 882 F.3d at 1284.

The panel in <u>Hinkeldey</u> took up the facial challenge and *sua sponte* modified the condition to *require* reconsideration if and when Redmon reaches 400 total hours of community service without considering other remedial options. 124 F.4th at 1094. But this ignores the fact that a challenge to the condition as applied to a defendant is not ripe to be decided until the facts relevant to whether *his* case is one where the "generally" standard in the § 5F1.3 Commentary is appropriate can be determined.

---

[7]<u>Cf.</u> <u>United States v. Fonville</u>, No. 20-7033, 2022 WL 817990, at *2 (10th Cir. Mar. 18, 2022) (holding ripe defendant's claim that district court failed to make adequate factual findings in imposing supervised release condition, even though substance of condition depended on contingent future events).

Options other than the 400-hour cap may be more appropriate for this exercise of the district court's discretion to modify or replace the challenged condition. For example, the court could allow Redmon to file an immediate motion to modify the condition, an order that can be immediately appealed, saving the Probation Office administrative burden in the interim. Cf. United States v. Gray, 175 F.3d 617, 618 (8th Cir. 1999). Or the court could order the government to bring the Hinkeldey-mandated motion to modify if and when the Probation Office decides it will enforce compliance with the 400-hour cap. As these are questions subject to the district court's exercise of discretion, that court should be first to address them.

For the foregoing reasons, we conclude that, when the defendant in a revocation proceeding makes a specific request to modify or not impose a community service condition because it does not include the 400-hour cap, it is an abuse of discretion not to consider the request and explain the court's response. Accordingly, we remand to the district court to consider whether to reimpose the previously unchallenged 20-hours-per-week condition and to consider what alternative option may be most appropriate to take into account the § 5F1.3 policy statement that a 400-hour cap is generally appropriate.

STRAS, Circuit Judge, concurring in part and concurring in the judgment.

I completely agree with the court's analysis on the so-called *Esteras* issue. As for the community-service condition, we have "a 'Case[] or Controvers[y]'" here, unlike in *United States v. Mejia*, because Redmon has shown sufficient hardship to make his claim ripe. 172 F.4th 601, 607 (8th Cir. 2026) (alterations in original) (quoting U.S. Const. art. III, § 2); *see ante*, at 21.

_____